CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 19 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GEORGE DEREK KNIGHT, | ) | |
| Plaintiff, | ) | Civil Action No. 7:05CV00551 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| C/O R. HALL, et al., | ) | By: Hon. Glen E. Conrad |
| Defendants. | ) | United States District Judge |

George Derek Knight, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against Correctional Officer R. Hall, Correctional Officer J. Duncan, and Captain R. Snyder.* The case is presently before the court on the defendants' motions for summary judgment. For the reasons set forth below, the defendants' motions will be granted in part and denied in part.

## Factual and Procedural Backgound

The plaintiff is incarcerated at Wallens Ridge State Prison. He alleges that Correctional Officers Hall and Duncan used excessive force against him on the morning of June 11, 2005, and that he was subsequently denied medical treatment by Captain Snyder. The plaintiff seeks monetary damages.

To support his claim for excessive force, the plaintiff alleges in his verified complaint that Hall and Duncan threw him on the floor while he was handcuffed and shackled at approximately 6:47 a.m. Hall then jumped on top of the plaintiff, landed his knee in the plaintiff's lower back, and punched the plaintiff in his back and kidney area. The plaintiff

---

*It appears that the defendants are sued in their individual capacities. However, to the extent that the plaintiff seeks to recover damages from the defendants in their official capacities, the defendants correctly argue that they are not subject to liability. The United States Supreme Court has held that state officers acting in their official capacities are not "persons" amenable to suit under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989).

alleges that when he cried out for help, Duncan began punching the plaintiff in the kidney area while Hall choked the plaintiff. According to the plaintiff, Hall told him that the assault was for filing grievances about improper treatment.

To support his claim against Snyder, the plaintiff alleges that he repeatedly requested medical treatment "between the beating and approximately 9:30 a.m." However, Snyder told him to lie down until the pain went away. The plaintiff alleges that he was eventually examined by a doctor, who scheduled the plaintiff for x-rays and treated him for pain.

The defendants have now moved for summary judgment. To support their motions, the defendants have provided a different version of events. Hall and Duncan allege that they attempted to escort the plaintiff to the shower area on the morning of June 11, 2005. However, before the plaintiff was placed in the shower, he became verbally disruptive. Therefore, the plaintiff was returned to his cell, where he was instructed to kneel in order for the officers to remove his leg restraints. The defendants allege that although the plaintiff initially bent down on one knee, he then attempted to aggressively stand and turn towards Hall and Duncan. At that time, Hall and Duncan placed the plaintiff on the floor to maintain control, using minimal force. The defendants allege that Duncan immediately notified Snyder, who arrived at approximately 6:50 a.m. Hall and Duncan specifically deny jumping on the plaintiff's back, or punching and choking him. Snyder contends that he did not deny the plaintiff's request for medical attention. He emphasizes that the plaintiff was examined by medical staff at approximately 7:15 a.m.

Both the plaintiff and the defendants have submitted copies of the plaintiff's medical records. The medical records indicate that the plaintiff was examined by a nurse on June 11, 2005 at 7:15 a.m. The plaintiff advised the nurse that his back was "fucked up." When the nurse asked the plaintiff if he was in pain, the plaintiff stated "can't you understand my back is fucked

2

up." Nonetheless, the plaintiff refused to raise his shirt for an examination. The nurse advised him to apply warm compresses to his back.

The plaintiff complained of back pain again on June 24, 2005. Although the plaintiff showed no visible signs of distress, he was placed on the list to see the doctor for further evaluation. A nurse was called to the plaintiff's cell two days later for complaints of back pain. The plaintiff was advised to contact the medical department if his condition worsened. The plaintiff was examined again for back pain on June 30, 2005. His medical records appear to indicate that he was prescribed Tylenol for pain. The plaintiff was subsequently seen for back pain on July 13, 2005 and July 14, 2005. The following day, x-rays were taken of the plaintiff's lumbar spine. The results of the x-rays were normal.

Nurses were called to the plaintiff's cell on July 20, 2005. The plaintiff reported that he was still experiencing back pain, and that he needed to see a doctor. It appears that the plaintiff was subsequently prescribed Motrin for back pain. On July 25, 2005, the medical department was notified that the plaintiff was having trouble breathing. The plaintiff reported that he could not catch his breath because of a bump on his back. Although the plaintiff did not appear to have any respiratory problems, the nurse observed a two to three-inch area of swelling on the plaintiff's back.

On August 1, 2005, the plaintiff appeared at his cell door for sick call, and reported that he had been experiencing back pain for two months. He was placed on the list for further evaluation. The plaintiff was subsequently examined by a doctor on August 7, 2005. During the examination, the plaintiff reported that he was tackled by correctional officers on June 11, 2005, and that his back had been hurting ever since the incident. The physician prescribed Motrin for pain and ordered x-rays of the plaintiff's thoracic spine. The results of those x-rays were normal.

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indust., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

A.  Plaintiff's Excessive Force Claim Against Hall and Duncan

It is well established that the use of excessive force upon an inmate by a prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment. See Hudson v. McMillian, 503 U.S. 1, 5 (1992); Whitley v. Albers, 475 U.S. 312, 319 (1986). To prevail on an excessive force claim, an inmate must show, objectively, that the use of force was contrary to contemporary standards of decency and that he suffered more than de minimis pain or injury. See Hudson, 503 U.S. at 7, 9. He must also satisfy a subjective component by showing that the force was applied "maliciously and sadistically for the purpose of causing harm" and not "in a good faith effort to maintain or restore discipline." Whitley, 475 U.S. at 320-321; see also Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

According to the plaintiff's version of the events, as provided in his verified complaint, no force was necessary. Without any valid reason, Hall and Duncan threw him on the floor while he was handcuffed and shackled, jumped on top of the plaintiff, and punched him in his

4

back and kidney area. Construed in the light most favorable to the plaintiff, the court concludes that the plaintiff's allegations create a genuine issue of material fact as to whether Hall and Duncan used force against him "maliciously and sadistically for the purpose of causing harm" and not "in a good faith effort to maintain or restore discipline." Whitley, 475 U.S. at 320-321; Williams, 77 F.3d at 761.

As for the extent of the injury, the plaintiff stated in his verified complaint and affidavit that he suffered back pain as a result of the alleged assault. Additionally, the plaintiff's medical records indicate that he was examined and treated for back pain on multiple occasions between June 11, 2005 and August 7, 2005. Hall and Duncan emphasize that the plaintiff had no visible signs of injury after the alleged incident, and that the x-rays of the plaintiff's spine were normal. However, construing the evidence in the light most favorable to the plaintiff, the court concludes that a genuine issue of material fact exists as to whether the plaintiff suffered more than de minimis pain or injury.

The defendants also argue that Hall and Duncan are entitled to qualified immunity with respect to this claim. However, government officials are entitled to qualified immunity from civil liability for performing discretionary functions only insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a government official is entitled to qualified immunity, the court must "(1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable official would have understood that the conduct at issue violated the clearly established right." Henderson v. Simms, 223 F.3d 267, 271 (4th Cir. 2000).

5

In this case, the constitutional right at issue is the right to be free from cruel and unusual punishment under the Eighth Amendment. It has been clearly established for some time that the use of excessive force by a prison official violates this constitutional right. See Hudson, 503 U.S. at 5; Whitley, 475 U.S. at 319. The plaintiff has presented evidence that Hall and Duncan severely assaulted him for no valid reason. If the plaintiff's version of the facts is true, a reasonable person in the defendants' positions would have known that their actions violated the plaintiff's right to be free from cruel and unusual punishment. For these reasons, the court concludes that Hall and Duncan are not entitled to qualified immunity, and that their motions for summary judgment must be denied as to the plaintiff's excessive force claim.

B. Plaintiff's Deliberate Indifference Claim Against Snyder

The plaintiff also alleges that after the alleged assault, Captain Snyder acted with deliberate indifference to his medical needs. It is well settled that a prison official may violate an inmate's Eighth Amendment right to be free from cruel and unusual punishment, if the official shows deliberate indifference to the inmate's serious illness or injury. Estelle v. Gamble, 429 U.S. 97, 102 (1976). The test for deliberate indifference involves both an objective and a subjective component. The alleged deprivation must be, objectively, "sufficiently serious," and the prison official must know of and disregard an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834-837 (1994). Moreover, in order to bring a deliberate indifference claim against a non-medical prison official, an inmate must show that the official was personally involved with a denial of treatment, deliberately interfered with prison physicians' treatment, or tacitly authorized or was indifferent to the prison physicians' misconduct. Militier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990).

6

To support his deliberate indifference claim, the plaintiff specifically alleges that Snyder ignored his requests for medical treatment "between the beating [at 6:47 a.m.] and approximately 9:30 a.m." However, this allegation is unsupported by the medical records submitted by the plaintiff. The plaintiff's medical records indicate that the medical department was contacted after the alleged assault, and that a nurse responded to the plaintiff's cell at approximately 7:15 a.m. The plaintiff does not allege that Snyder interfered with the nurse's examination or tacitly authorized the nurse to provide inadequate medical treatment. Even assuming that Snyder somehow delayed the plaintiff's access to medical treatment, the plaintiff has provided no evidence to suggest that the delay, itself, caused substantial harm. See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wynn v. Mundo, 367 F. Supp. 2d 832, 838 (M.D.N.C. 2004). For these reasons, the court concludes that Snyder is entitled to summary judgment with respect to the plaintiff's deliberate indifference claim.

## Conclusion

For the reasons stated, the defendants' motions for summary judgment will be granted in part and denied in part, and the case will proceed as to Hall and Duncan. The case will be referred to United States Magistrate Judge Pamela Meade Sargent, pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge shall conduct such proceedings as she deems appropriate, including an evidentiary hearing, if necessary, and shall submit to the court a report setting forth findings of fact, conclusions of law, and a recommended disposition.

The Clerk is directed to send certified copies of this opinion and the accompanying order to the plaintiff, counsel of record for the defendants, and Magistrate Judge Sargent.

**ENTER:** This 19th day of April, 2006.

_United States District Judge_

7