# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **GEORGE DEREK KNIGHT,** ) | |
| Plaintiff ) | Civil Action No.: 7:05cv00551 |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **C/O R. HALL, et al.,** ) | |
| Defendants ) | By: PAMELA MEADE SARGENT |
| ) | United States Magistrate Judge |

Plaintiff, George Derek Knight, an inmate held at Wallens Ridge State Prison in Big Stone Gap, Virginia, ("Wallens Ridge"), filed this action pro se for monetary damages under 42 U.S.C. § 1983 against Virginia Department of Corrections, ("DOC"), Officer R. Hall and former DOC Officer Jason Duncan for the use of excessive force against him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment and against Captain Robert Snider for deliberate indifference to his medical needs.[1] By Memorandum Opinion entered April 20, 2006, Knight's deliberate indifference claim was dismissed.[2] (Docket Item No. 51). Thus, the only claim remaining before this court is Knight's excessive force claim. Jurisdiction over this matter is based upon 28 U.S.C. §§ 1331 and 1343. This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. §

---

[1]As noted in Judge Conrad's Memorandum Opinion entered April 20, 2006, (Docket Item No. 51), it appears that Knight sued the defendants in their individual capacities. However, to the extent that Knight seeks to recover monetary damages from the defendants in their official capacities, they are not subject to liability. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that state officials acting in their official capacities are not "persons" under § 1983).

[2]Judge Conrad's accompanying order has not been filed in this case.

-1-

636(b)(1)(B) to conduct an evidentiary hearing and to make a recommended disposition.

The undersigned held an evidentiary hearing in this case on May 15, 2006. Based on the evidence presented, the undersigned recommends that the court find in favor of defendants Hall and Duncan on Knight's excessive force claim.

## *I. Facts and Analysis*

The evidence before the court shows that Knight was an inmate at Wallens Ridge on June 11, 2005.[3] Knight was housed in the segregation unit at that time because he had been transferred from another facility and was being processed into the general prison population. Knight alleges that, at approximately 6:47 a.m. on June 11, 2005, Correctional Officers Hall and Duncan came to his cell to escort him to the shower. Knight further alleges that when they arrived at the shower door, Hall opened the door, but then immediately slammed it, stating that he was not getting a shower because of his earlier complaints against Hall for denying him hygiene. Knight claims that Hall made a statement to the effect of "You think I'm going to let you get away with what you did?" Knight alleges that as Hall and Duncan escorted him back to his cell, Hall stated "I'm going to get him." Upon arriving at his cell, Knight contends that, in violation of prison policy, he was not ordered to get on his knees so that his restraints could be removed. Instead, Knight alleges that upon arriving at his cell, Hall and Duncan entered the cell with him and jumped on him, knocking him onto the floor

---

[3]The evidence presented at trial shows that Knight had been incarcerated at Wallens Ridge for approximately one and one-half years at the time of the incident but that he was previously housed at another Virginia state prison before being transferred to Wallens Ridge.

-2-

face-first and began assaulting him at the back of the cell. Specifically, Knight alleges that Hall jumped on top of him, landed his knee in Knight's back and punched and kicked Knight in the back and kidney area. Knight further alleges that when he cried out for help, Duncan began punching him in the kidney area while Hall choked Knight for "a good minute." According to Knight, Hall told him that the assault was due to Knight's filing grievances against him for denying Knight hygiene and other improper treatment.

Knight claims that this assault lasted for approximately five to 10 minutes, at which time Duncan asked Hall what they were doing. At that time, according to Knight, Duncan called for assistance, and Hall and Duncan held Knight down until additional correctional officers arrived. Knight testified that approximately five correctional officers, whom he did not know, arrived at his cell roughly 15 minutes later. At that time, Knight alleges that he was brought to his feet, at which time he told the officers that his knee, back and toe were hurting. He testified that it was at that time that two other correctional officers relieved Hall and Duncan from their duties.

Officers Hall and Duncan testified to a different version of the facts. Specifically, Hall and Duncan both testified that they were responsible for escorting inmates housed in Knight's housing unit to the showers on the morning of June 11, 2005. They testified that they restrained Knight and began escorting him to the shower. However, Hall and Duncan testified that after Knight was removed from his cell, but before he entered the shower, Knight became verbally disruptive, using obscenities toward them. Duncan testified that he told Knight to calm down. Upon Knight's becoming verbally disruptive, Hall and Duncan testified that Knight's

-3-

shower was canceled and he was escorted back to his cell. Hall testified that Knight continued to curse as he was being escorted back to his cell. Both Hall and Duncan testified that upon arriving at his cell, Knight was ordered to get on his knees for the removal of leg irons. They both testified that Knight went down on one knee, but then attempted to stand back up and turn around toward the officers in an aggressive manner. Hall testified that Knight appeared angry and Hall thought that the situation was going to turn physical. Hall testified that he was concerned for his safety. Hall and Duncan testified that they took Knight to the ground. Duncan testified that as they were taking Knight down, he continued to yell and curse. Both Hall and Duncan testified that they used only the amount of force necessary to take Knight to the ground. Hall testified that he never kicked, choked or beat Knight on the back. Likewise, Duncan testified that he did not punch Knight, nor did he ever see Hall abuse Knight. Both Hall and Duncan testified that the Watch Commander, Robert Snider, was notified of the incident and other correctional officers arrived at Knight's cell, relieving them of their duties. Hall and Duncan testified that, thereafter, they left Knight's housing unit to complete serious incident reports regarding the events.

Knight argues that Hall and Duncan used excessive force against him on June 11, 2005, in violation of the Eighth Amendment's prohibition against the infliction of "cruel and unusual punishment." U.S. CONST. AMEND. VIII. This amendment not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The unnecessary and wanton infliction of pain by a prison official through the use of excessive force upon an inmate has been clearly established as a violation of the Eighth Amendment's prohibition on cruel and unusual punishment for a number of years. *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Whitley v. Albers*,

-4-

475 U.S. 312, 319 (1986). The determination of whether the use of force by a prison official violates the Eighth Amendment includes both a subjective and objective component. *See Williams*, 77 F.3d at 761 (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)).

Not every malevolent touch by a prison guard amounts to a deprivation of constitutional rights. *See Hudson*, 503 U.S. at 9 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). To meet the objective component in an excessive force case, an inmate must show that he suffered more than de minimis pain or injury. *See Williams*, 77 F.3d at 761(citing *Hudson*, 503 U.S. at 9-10). Since mankind has devised some tortures that leave no lasting physical evidence of injury, the courts have recognized that the objective component can be met by "the pain itself" even if the inmate suffers no "enduring injury." *Williams*, 77 F.3d at 762 (quoting *Norman v. Taylor*, 25 F.3d 1259, 1264 n.4 (4th Cir. 1994) (en banc)). "A prisoner ... asserting malicious and sadistic use of force need not show that such force caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action. ... All that is necessary is proof of more than *de minimis* pain or injury." *Williams*, 77 F.3d at 761 (citation omitted).

To meet the subjective component in an excessive force case, the inmate must show that the prison official applied force "maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320-21. The inquiry under the subjective standard is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. The Supreme Court in *Whitley* set out several factors which should be considered in determining whether prison officials acted maliciously and sadistically.

In particular, the court should consider:

1)  the need for application of force;
2)  the relationship between that need and the amount of force used;
3)  the threat reasonably perceived by the responsible officials; and
4)  any efforts made to temper the severity of a forceful response.

*Williams*, 77 F.3d at 762 (citing *Whitley*, 475 U.S. at 321).

Given the evidence presented at trial, I first find that Knight is simply unable to meet the objective component of an excessive force claim. Knight testified at trial that he suffered injuries to his back, knee, neck and toe and that he experienced difficulty breathing, as well as blood in his urine for the month following the incident. However, Knight's medical records do not support a finding that Knight suffered more than de minimis pain or injury as a result of the incident on June 11, 2005. For instance, Knight did not report any neck pain or toe pain to Nurse Spears immediately following the incident. Knight's medical records reveal that he was seen by medical for complaints of back pain on June 24, 2005. However, the records further reveal that, at that time, Knight was standing at his cell door with no signs of distress. Knight was placed on a list to see a doctor for his back pain. On June 26, 2005, Knight reported that he was unable to lie down due to pain in his lower and mid-back. He also complained of blood in his urine. However, he refused to have his vital signs checked. Despite these complaints of back pain, on June 29, 2005, security placed a call to medical informing them that Knight had been doing push-ups and standing on the sink in his cell talking to other inmates through a vent for approximately an hour

and a half.[4]  The following day, Knight saw Dr. Smith with complaints of back pain for the previous five days.  At that time, he noted recent problems with security.  No abnormalities were noted.  Knight was placed on Tylenol, and a urinalysis was ordered.  This urinalysis was performed on July 12, 2005, and was within normal limits, showing no blood in Knight's urine.  On July 13, 2005, Knight complained of back pain and noted that he had run out of his medications.  On July 14, 2005, Knight complained of back pain and stated that he needed to see a doctor, but he refused to come to his cell door.  On July 15, 2005, an x-ray of Knight's lumbar spine yielded normal results.  On July 20, 2005, Knight complained of back pain and again stated that he needed to see a doctor.  The nurse's notes indicate that Knight was placing clothing into a laundry bag and did not appear to be in any distress.  He was given pain medication and was informed that he was scheduled to see a doctor.  On July 22, 2005, Knight complained of continuous back pain.  On July 23, 2005, Knight complained of an injury to his arm from the use of handcuffs during a shakedown of his cell.  He did not complain of a back injury.

On August 1, 2005, Knight complained of pain in his lower back for the previous two months.  He had no complaints of blood in his urine at that time.  On August 3, 2005, Knight reported to Dr. Thompson that he was tackled by officers on June 11, 2005.  He stated that he could not lie on his back and he could not bend forward.  He made no complaints concerning his toe.  He was placed on Motrin for five days.  On August 5, 2005, a nurse arrived at Knight's cell after receiving a sick call.  However, upon her arrival, Knight stated that he did not place a sick call.  An x-

---

[4]In addition to Knight's medical records reflecting such incidents, Hall testified that he saw Knight climb on the sink in his cell several times to talk to other inmates. He further testified that he had seen Knight standing and walking.

-7-

ray of Knight's thoracic spine, performed on August 12, 2005, yielded normal results. On August 17, 2005, Knight saw Dr. Thompson regarding his back, arm and leg complaints. He was ambulatory to medical and denied pain at that time. A comprehensive metabolic panel and a urinalysis were ordered. Knight was told to take Tylenol as needed. The urinalysis and comprehensive metabolic panel were collected in September 2005. The urinalysis showed a trace of blood in Knight's urine. Dr. Thompson looked at Knight's toe and trimmed the nail. On August 23, 2005, a code blue was called by security after Knight was found unresponsive on the floor of his cell. He complained of pain in the left side of his chest. Three EKGs were performed, and he was placed in an observation unit for approximately one week. Marsha Stanford, Director of Nursing at Wallens Ridge, testified that this episode could not be connected to the June 11, 2005, incident. Stanford also testified that, according to Knight's medical records, he had injured his back while lifting weights at another facility before being transferred to Wallens Ridge. She noted that Knight was in medical for a few weeks as a result of this injury.

Thus, I find that Knight's medical records support no more than de minimis pain or injury as a result of the June 11, 2005, incident. Knight failed to complain of neck or toe pain immediately following the incident. He eventually had to have the nail trimmed, but there is no evidence that this was a result of Hall's and Duncan's actions on June 11, 2005. Moreover, even if so, it cannot be construed as constituting anything more than de minimis pain or injury. Further, despite Knight's repeated complaints of back pain, x-rays revealed normal results, Knight was treated conservatively with warm compresses and pain medication and Knight's own actions following the incident belie any contention of a serious injury as a result thereof. Only one urinalysis showed a trace of blood in Knight's urine, which Stanford

testified could happen to any individual, and Knight's allegation of shortness of breath is not verified by his medical records, which indicate that his respirations were normal. Despite being found unresponsive in his cell in August 2005, this episode could not be attributed to the June 11, 2005, use of force. Finally, it is important to note that Knight had a pre-existing back injury at the time he transferred to Wallens Ridge. For all of these reasons, I find that Knight has failed to meet the objective component of an excessive force claim.

I also find that Knight has failed to meet the subjective component of an excessive force claim in that I find that the assault as alleged by Knight simply did not occur. I first note that none of Knight's medical records indicate any allegation by Knight that his injuries were the result of an assault by Hall and Duncan. The only note even alluding to the June 11, 2005, use of force was dated August 3, 2005. At that time, Knight indicated that he was "tackled" by officers on June 11, 2005. However, Hall and Duncan do not dispute that they did, indeed, tackle Knight on that date. However, they maintain that they used the least amount of force necessary to maintain control of Knight following his failure to obey a direct order and his effort to rise to his feet in an aggressive manner. Moreover, Snider testified that when he arrived at Knight's cell, he did not see either of the officers' knees in Knight's back. He further testified that Knight appeared to be struggling with the officers, but he did not see either officer attack Knight. Snider also testified that Knight did not complain to him that he had been attacked by Hall and Duncan.

Finally, I note that Knight testified that Hall and Duncan assaulted him for approximately five to 10 minutes, "a good minute" of which consisted of Hall choking him. Knight stated that the other officers arrived at his cell approximately 15 minutes

-9-

after Duncan called for assistance. I find that, despite Knight's version of the events, time-stamped videotape evidence shows that Knight was taken from his cell and the shower door was opened at approximately 6:45:19 a.m. The videotape then shows the officers escorting Knight back to his cell, which they all enter at approximately 6:47 a.m. At approximately 6:48:17 a.m., other officers arrive at Knight's cell. At approximately 6:50 a.m., three more officers arrive at Knight's cell. Finally, at 6:57 a.m., all officers are out of Knight's cell. Given this evidence, I find that the assault, as testified to by Knight, simply could not have occurred. Despite Knight's contention that he was beaten rather severely by Hall and Duncan, including being choked for "a good minute," the videotape evidence clearly shows that only approximately one minute, seventeen seconds elapsed from the time the three entered Knight's cell until the time that additional officers arrived at his cell. Thus, there would not have been time for Hall and Duncan to have repeatedly punched and kicked Knight, in addition to choking him for "a good minute" as testified to by Knight. Moreover, Knight testified that the assault lasted for at least five to 10 minutes. Clearly, this contention is contradicted by the videotape evidence. Even assuming that the incident lasted only five minutes, the lower end of Knight's estimation of the duration of the assault, the videotape evidence shows that the takedown of Knight took roughly one-quarter of that time. Finally, Knight alleged that following the five- to 10-minute assault, other officers did not arrive at his cell for 15 minutes. Again, this contention simply cannot be true given the time-stamped videotape evidence. Even assuming that the officers to whom Knight was referring was the second set of officers to arrive at his cell, they arrived within three minutes of Hall, Duncan and Knight returning to Knight's cell.

For all of these reasons, I find that Knight has failed to meet his burden of proof

-10-

Case 7:05-cv-00551-GEC-PMS   Document 64   Filed 07/14/06   Page 10 of 13   Pageid#: 283

on the excessive force claim, and I recommend that the court find in the defendants' favor on the excessive force claim.

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Hall and Duncan used the least amount of force necessary to maintain control of Knight on June 11, 2005; and

2. Even assuming that Hall and Duncan used excessive force against Knight on June 11, 2005, the injuries Knight sustained were de minimis at most.

### RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court find in the defendants' favor on Knight's excessive force claim.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)©) (West 1993 & Supp. 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written

-11-

objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen E. Conrad, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     This 14th day of July 2006.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE